# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| CustomAir Ambulance, LLC, as assignee of Laura D. Olsen,<br><br>Plaintiff,<br><br>vs.<br><br>Lund Foods Holdings, Inc. Health Care Plan; Lund Foods Holding, Inc.; and Medica Insurance Company and Medica Health Management, LLC,<br><br>Defendants. | Case No.:_____<br><br>**PLAINTIFF'S COMPLAINT** |

## INTRODUCTION

This is a claim for benefits due under an ERISA-governed health insurance plan. Plaintiff, as assignee of the insured under the insurance policy, seeks reimbursement for emergency fixed-air transport from the Mayo Clinic in Rochester, Minnesota, to the Rockville Walden Center in Vernon, Connecticut. One issue in the case involves the definition of an "emergency" under the plan and, more specifically, whether Defendants improperly refused to apply the "prudent layperson" standard laid out by the plan in assessing the need for transport. A second issue involves Defendants' method of calculating the

1

reimbursement, where the plan administrator purported to utilize a nationwide marketplace standard, but then instead reimbursed based on in-network contracts. Plaintiff claims these failings amounted to abuses of discretion such that the denial of benefits was wrongful. Moreover, based on procedural irregularities, a *de novo* standard of judicial review should apply.

## THE PARTIES

1. Plaintiff CustomAir Ambulance, LLC ("CustomAir") is the contractual assignee of all legal claims, causes of action, rights and damages resulting from Defendants as alleged herein. CustomAir was a provider of health care services to assignor Laura Olsen. Laura Olsen, who is over the age of 18, was the insured and "beneficiary," the daughter of a "participant" of the insurance plan as alleged herein. CustomAir and Laura Olsen may be referred herein collectively as "Plaintiff."

2. Defendant Lund Food Holdings, Inc., ("Lund") is a Minnesota corporation authorized and existing pursuant to the laws of Minnesota. Lund is the sponsor and the plan administrator of, and controls and can direct payment from, of the Lund Foods Holdings, Inc. Health Care Plan (the "Plan").

3. Defendants Medica Insurance Company and Medica Health Management, LLC, are Minnesota business entities authorized and existing pursuant to the laws of Minnesota. These entities are referred herein collectively as "Medica."

2

4.  The Plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), found generally at 29 U.S.C. § 1001 *et seq.* The Plan is a self-insured medical plan generally intended to meet the requirements of Internal Revenue Code sections 106 and 105(h). Medica is the claims administrator of the Plan.

## VENUE AND JURISDICTION

5.  Plaintiff has exhausted all Plan administrative procedures prior to initiating this lawsuit (the "Lawsuit").

6.  This Complaint arises under ERISA and the principles of federal common law developed thereunder.

7.  This Court has jurisdiction pursuant to the jurisdictional provision of ERISA, 29 U.S.C. §1132(e)(1), and federal question jurisdiction under 28 U.S.C. §1331.

8.  Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) because this is the district where the plan was administered, where the breach took place, and where Defendants may be found.

## FACTS / BACKGROUND

### The Plan and Its Terms

9.  Darlene Olsen was at all material times hereto a Plan participant.

10. Laura Olsen is Darlene Olsen's daughter.

11. Laura Olsen was at all times material hereto a Plan beneficiary.

3

12. The Plan terms are set forth in a lengthy written document.

13. During the claims process, Medica produced what is purported to be the Plan document.

14. The Plan was executed and adopted by the sponsor's senior director of human resources and was effective no later than January 1, 2016.

15. The Plan provides coverage for "ambulance" services. (Plan doc., p. 20).

16. "Emergency" ambulance services are covered as an "in-network" benefit, which provides for a 20 percent coinsurance. "Non-emergency" ambulance services are covered with a 40 percent coinsurance.

17. According to Medica, to be covered as an in-network benefit, the transport must be "medically necessary" and an "emergency." (Plan doc., 107, 109).

18. An "emergency" is defined by the Plan as: "A condition or symptom (including severe pain) that a prudent layperson, who possesses an average knowledge of health medicine, would believe requires immediate treatment to: (1) preserve your life; or (2) Prevent serious impairment to your bodily functions, organs or parts; or (3) prevent placing your physical or mental health (or, if you are pregnant, the health of your unborn child) in serious jeopardy." (Plan doc., 107).

19. The Plan sets forth timing for submission of a claim and appeals. The

4

Plan requires a participant / beneficiary to proceed only to a first level appeal. All other review(s) of a claim denial are non-mandatory. (Generally, Plan doc., 100-01).

### The Emergency Transport

20. CustomAir offers its patients worldwide air ambulance transport.

21. On September 20, 2016, Darlene Olsen contacted CustomAir.

22. Darlene Olsen had been advised by medical professionals that Laura Olsen was in need of medically necessary, emergency transportation from Minnesota's Mayo Clinic in Rochester, Minnesota, to the Rockville Walden Center in Vernon, Connecticut. CustomAir contacted the Mayo Clinic case manager for Laura Olsen, who confirmed that Laura Olsen needed medically necessary, emergency transportation.

23. CustomAir contacted Medica, which acknowledged the medical necessity and emergent nature of the transportation and authorized insurance coverage for the flight.

24. Based on the medical information conveyed to Darlene and Laura Olsen, and based on their historical and personal knowledge of Laura Olsen's medical situation, and with an average knowledge of health medicine, the Olsen's understood that the need for a medical transport represented an "emergency," as would a prudent layperson with average knowledge of health medicine.

25. On September 21, 2016, CustomAir transported Laura Olsen.

5

26. Thereafter, the Olsens timely and pursuant to Plan terms submitted a claim for benefits under the Plan. Medica initially denied the claim entirely.

27. Thereafter followed multiple appeals.

28. In a January 3, 2017, "amended letter," Medica made reference to a November 18, 2016, appeal, originated by Dr. Aditya Devalapalli. Medica denied that appeal.

29. The Olsens also filed an appeal, on December 2, 2016. That appeal was apparently denied on December 14, 2016.

30. The Olsens submitted what was mis-identified as a "request for reconsideration of appeal," which in fact apparently was the third appeal at that point.

### The Final Appeals Denial(s)

31. In a March 14, 2017, letter, Medica reversed course in part, but still denied the substance of the claim for coverage.

32. Medica agreed that the September 21, 2016 transport was medically necessary under the Plan.

33. The only basis for the denial of in-network benefits according to Medica was that, in its conclusion based on selected portions of medical documentation and reliance on an after-the-fact medical review, the transport was not an "emergency" as defined by the Plan.

34. In reaching this conclusion, Medica expressly stated that it was

6

disregarding the real-time information and conclusions from September 2016, as well as the Olsens' views, and instead was relying on a hindsight standard.

35. Medica also concluded that "the air ambulance transport was not an 'emergency' because it was not 'made or done at once.'" This also ignored the real-time urgency and attempt to move the patient on an emergency basis, and instead focused on the timing that occurred by looking back to the events in question.

36. The Medica denial was based on an entirely untenable and wholly unreasonable interpretation of Plan language that is clear and unambiguous.

37. The issue is not whether something in hindsight actually was an emergency, or made or done at once.

38. Rather, the plan language finds an emergency when "a prudent layperson, who possesses an average knowledge of health medicine, would believe requires immediate treatment" to avoid further serious harm.

39. Expert testimony is not necessary to make this determination.

40. The timing involved between the decision to transport and the transportation is not relevant.

41. The Olsens as prudent laypersons with average knowledge of health medicine believed emergency transportation was needed. As prudent laypersons, they relied on statements and information from healthcare providers prior to the transport, and had their fears and concerns confirmed after arrival at the new

7

facility, that they properly considered the transport an emergency.

42. Even if Medica used the proper standard when it ignored the "prudent layperson" language, it nevertheless reached a conclusion that is not reasonable and is not supported by the Plan.

43. In further communications from the Olsens and Medica on August 16, 2017, in what apparently would have been at least the fourth appeal, the Olsens specifically referenced the "prudent layperson" standard. This communication also references a settlement offer. However, it is not being discussed herein in order to prove liability. It is being referenced to show Medica's knowledge and state of mind in continuing to deny the claim and refusing to apply the prudent layperson standard and consider other issues.

44. Medica still refused to apply the prudent layperson standard.

45. In the March 14, 2017, denial letter, Medica also chose a reimbursement amount based on a calculation that is wholly unreasonable.

46. Medica claims that the Plan allows for four different reimbursement determinations.

47. Medica rejected all other reimbursement options.

48. Instead, Medica chose the following to use in its calculation: "A nationwide provider reimbursement database that considers prevailing reimbursement rates and/or marketplace charges for similar services in the geographic area in which the service is provided."

759663.5

49. However, in the same letter, Medica admitted that "Medica does not possess a 'nationwide provider reimbursement database' for air ambulance transportation."

50. In so doing, Medica admitted that the reimbursement method as adopted was not a reasonable reimbursement method at all.

51. Instead, Medica calculated what it claimed were, without supporting information or documentation, rates from two in-network fixed-wing air transport providers. These are by definition not nationwide and marketplace standards, which the Plan requires.

52. As a matter of law, in-network contractual agreements cannot serve as the basis for a calculation based on "usual and customary charges" and/or other charges intended to be based on nationwide prevailing or marketplace charges.

53. In the claims file, Medica noted that air transportation providers typically will not discount transport fees by more than 5 percent. Medica also received detailed billing information from CustomAir and did not refute the validity of the charges or question whether the charges were consistent with prevailing marketplace rates.

54. Medica chose not to question the reimbursement amount being sought in the initial claim or in the first appeal. Rather, it simply chose to deny coverage entirely.

55. This Court should find that CustomAir's transport rate was consistent

9

with a nationwide, usual and customary, and/or marketplace standard, or determine *de novo* the proper amount of the reimbursement owed to CustomAir under the Plan.

56. This entire judicial review of Medica's decisions should be *de novo*.

57. Medica required multiple appeals during this process, far more than the one required by the Plan itself.

58. Yet, Medica has demanded that Plaintiff submit yet another appeal. Medica's actions are intended to delay and frustrate Plaintiff's goal of obtaining compensation to which it is entitled under the Plan's plain language. Medica is also abusing the demand for multiple appeals, by trying to "fix" its prior baseless denials with new factual and legal analysis, so as to try to withstand judicial scrutiny.

59. Even if yet another appeal were required under the Plan (it is not), such further appeal would be futile.

60. Medica's interpretation of the Plan is wholly unreasonable and entirely inconsistent with the intent and plain meaning of the Plan language.

61. The goals of the plan with regard to emergency medical care are to allow such care when a prudent layperson determines there is an emergency. Medica instead adopted an after-the-fact review and conclusion. Such an interpretation would have serious adverse effects on insureds, who must be able to obtain emergency care, even when what a prudent layperson views as an

10

emergency turns out in hindsight not to have been an emergency.

62. Moreover, Medica wholly disregards the "prudent layperson." This is contrary to the plain language of the plan.

63. Likewise, Medica's interpretation of "immediate" and the decision to rely on a "national database" which it has admitted does not exist, are inconsistent with the Plan. CustomAir is an express contractual assignee of the claims under the Plan.

64. On February 23, 2017. Laura Olsen broadly assigned CustomAir all her legal claims, causes of action and rights involved in bringing this ERISA Lawsuit.

65. The assignment from Laura Olsen to CustomAir reads in part: "I authorize and request payment of benefits to be made to CustomAir Ambulance specifically to include any and all claims, causes of action or claims for relief available under ERISA and related rules and regulations. I intend by this assignment to put CustomAir in my stead with respect to such claims such that CustomAir shall have derivative standing as an assignee of my ERISA claims including, without limitation, claims for breach of fiduciary duty and any other legal and/or administrative claims."

759663.5

# FIRST CLAIM FOR RELIEF

## (Wrongful Denial of Benefits Under an ERISA Plan Pursuant to 29 U.S.C. §1132(a)(1)(B))

66. All prior paragraphs are hereby re-alleged.

67. Laura Olsen is a Plan beneficiary who timely submitted a claim and exhausted all her administrative appeal(s).

68. Laura Olsen is entitled to certain denied Plan benefits.

69. Laura Olsen incurred Plan-covered, emergency ambulance expenses which Defendants did not consider or pay under the express terms of the Plan.

70. The non-network provider reimbursement amount, based on in-network contracts when the Plan requires nationwide, marketplace calculations, is arbitrary and capricious and an abuse of discretion, if the Court decides to apply that standard.

71. The Plan terms are clear and unambiguous. To the extent that Plan terms are found to be ambiguous, Defendants must be estopped from interpreting Plan language as to deny claims. Medica approved and pre-authorized the medical transport as emergent.

72. CustomAir is the assignee of Laura Olsen's legal claims.

73. Medica and Lund control and direct the Plan and its payments.

74. Medica and/or Lund are in breach of the terms of the Plan in violation of 29 U.S.C. §1132(a)(1)(B) and Plaintiff has been harmed.

75. Plaintiff is entitled to payment pursuant to the Plan terms.

## SECOND CLAIM FOR RELIEF

### (Claim in the Alternative for a Remedy for Breach of Fiduciary Duty under ERISA as provided for by 29 U.S.C. §1132(a)(3))

76. In the alternative to the theory of relief set forth in Count I, Plaintiff restates and re-alleges the allegations contained in the foregoing paragraphs.

77. Medica is the Plan administrator and a Plan fiduciary.

78. Medica owed the Plan insured and the beneficiary fiduciary duties in the manner it considered claims and appeals.

79. Medica made the determinations as alleged herein.

80. Medica owed fiduciary duties to act solely in the interests of plan participants and beneficiaries, like Laura Olsen, for the purpose of providing benefits under the Plan and to do so using that degree of care, skill, and diligence of a prudent person as required by 29 U.S.C. § 1104(a)(1).

81. Medica breached the fiduciary duties it owed to Laura Olsen by: (a) approving and preauthorizing the beneficiary's flight as emergent; (b) not denying the initial claim and first appeal on grounds that the flight was not emergent; (c) later denying the claim on a second appeal / request for reconsideration on the conclusion that the transport was not emergent; (d) refusing to apply the "prudent layperson" standard as set forth by the Plan; and (e) calculating the reimbursable

759663.5

amount by claiming to use a nationwide marketplace standard, but then instead using costs of in-network providers.

82. CustomAir is the assignee of claims for breach of fiduciary duty.

83. Laura Olsen and, thus, CustomAir have been damaged by Medica's breaches of its fiduciary duties and request relief pursuant to 29 U.S.C. §1132(a)(3).

## THIRD CLAIM FOR RELIEF

### (Equitable estoppel as a form of relief under the federal common law of ERISA pursuant to 29 U.S.C. §1132(a)(3))

84. All prior paragraphs are re-alleged.

85. Medica preauthorized and preapproved Laura Olsen's fixed-wing transport.

86. Medica agreed at the outset, on the same information it later reviewed, that the transport was emergent.

87. Medica did not express any limitation as to coverage or identify any limitation as to reimbursable cost.

88. Medica was acting on its own behalf and as an agent of the other Defendants.

89. Defendants, by their actions and CustomAir's express and unambiguous reliance on the assurance of full payment, are estopped to deny that the transport was emergent.

759663.5

WHEREFORE, having made the above allegations, Plaintiff appeals to this Court for:

A. Benefits due or other appropriate equitable relief as provided for by ERISA in an amount to be proved;

B. Costs and attorneys' fees pursuant to 29 U.S.C. § 1132(g);

C. Injunctive relief to estop and prevent Defendants from denying the claim made under the Plan herein;

D. Pre- and post-judgment interest in the highest lawful rate; and

E. Such other and further relief as the Court may allow.

Dated: November 21, 2017

LAW OFFICE OF KATHERINE L. MACKINNON, P.L.L.C.

By: *Katherine L. MacKinnon*
Katherine L. MacKinnon (MN Id 170926)
2356 University Avenue W. Suite 230
St. Paul, MN 55414
952-915-9215 (ph)
952-915-9217 (fax)
katemackinnon-atty@msn.com
***Counsel for Plaintiff CustomAir Ambulance LLC***

759663.5