UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CustomAir Ambulance, LLC,
as assignee of Laura D. Olsen,

Civil No. 17-5191 (DWF/KMM)

Plaintiff,

v.

**MEMORANDUM
OPINION AND ORDER**

Lund Food Holdings, Inc. Health
Care Plan, and Medica Self-Insured,

Defendants.

_____

Jonathan B. Frutkin, Esq., and Robert Neil Mann, Esq., Radix Law, PLC; and Katherine L. MacKinnon, Esq., Law Office of Katherine L. MacKinnon, counsel for Plaintiff.

Andrew J. Holly, Esq., Vanessa J. Szalapski, Esq., and William R. Stoeri, Esq., Dorsey & Whitney, LLP, counsel for Defendant Lund Food Holdings, Inc. Health Care Plan.

Brandie L. Morgenroth, Esq., and William D. Hittler, Esq., Nilan Johnson Lewis PA, counsel for Defendant Medica Self-Insured.

_____

## INTRODUCTION

This matter is before the Court on motions to dismiss filed by Defendants Medica Self-Insured and Lund Food Holdings, Inc. Health Care Plan. (Doc. Nos. 21, 28.) For the reasons set forth below, the Court grants Defendants' motions.

## BACKGROUND

Lund Food Holdings, Inc. established and sponsors the Lund Food Holdings Health Care Plan (the "Plan") for the benefit of eligible employees and their dependents.

(Doc. No. 5 ("Am. Compl.") ¶ 2.) Medica Self-Insured ("Medica") sponsors the Plan. (*Id.* ¶ 4.) Darlene Olsen ("Darlene"), was an employee of Lund Food Holdings, Inc., and a participant in the Plan. (*Id.* ¶ 2). Darlene's daughter, Laura Olsen ("Laura"), was a beneficiary of the Plan as well. (*Id.*) CustomAir Ambulance, LLC ("CustomAir") is the contractual assignee of all legal claims, causes of action, rights, and damages resulting from Defendants' alleged actions. (*Id.* ¶ 1). The Plan is an employee welfare benefit plan governed by the provisions of the Employee Retirement Income Security Act of 194, 29 U.S.C. § 1001, as amended ("ERISA"). (*Id.* ¶ 5.)

On September 21, 2016, CustomAir provided air ambulance services to Laura from Rochester, Minnesota to Rockville, Connecticut. (*Id.* ¶ 23; Doc. No. 25 ("Edwards Aff.") ¶ 10, Ex. 2 at 1-2.)[1] On September 29, 2016, CustomAir submitted a $399,464 claim to Medica for Laura's transport. (*See* Edwards Aff. ¶ 10, Ex. 2.) On November 11, 2016, Medica notified CustomAir that it required Laura's medical records to determine whether the claim was covered. (Edwards Aff. ¶ 13, Ex. 3 at 2.)

On November 18, 2016, Laura's treating physician, Dr. Aditya Devalapalli, faxed Laura's medical record to Medica. (Edwards Aff. ¶ 14, Ex. 4.) On December 2, 2016, Medica determined that Laura's air ambulance services were not "medically necessary," and denied CustomAir's claim for $399,464 in its entirety. (Edwards Aff. ¶ 15, Ex. 5 ("Dec. 2, 2016 Denial"); *see also* Am. Compl. ¶ 24.)

---

[1] In reviewing a motion to dismiss, the Court will consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Because this is a case involving ERISA, the Court will also consider ERISA Plan documents. *See Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

The Plan limits coverage to health services that are "medically necessary."[2] (Edwards Aff. ¶ 6, Ex. 1 ("Plan Document") at MEDICA000151; MEDICA000252.) This includes "emergency[3]" ambulance services and certain "non-emergency" services provided by both "network" and "non-network" providers. (Edwards Aff. ¶ 6, Plan Document at MEDICA000163; *see also* Am. Compl. ¶ 14.) The amount of reimbursement for a claim submitted by a provider is based on whether the transportation is an emergency, and whether the provider is considered a "network" or "non-network" provider.[4] (Plan Document at MEDICA0000163.) A "non-network" provider is reimbursed based on specific criteria defined in the Plan Document. (Edwards Aff. ¶ 6, Plan Document at MEDICA0000253.)

When a claim is denied, there is an administrative review process described in the Plan. (Edwards Aff. ¶ 7, Plan Document at MEDICA000219-220; MEDICA0000243-244.) Specifically, within 30 days of receiving proof of a claim, Medica provides written notification that the claim has been denied. (*Id.,* Plan Document

---

[2] The Plan Document defines "medically necessary" as "[d]iagnostic testing and medical treatment, consistent with the diagnosis of and prescribed course of treatment for your condition, and preventive services . . . ." (Plan Document at MEDICA000252.) It then sets forth five criteria necessary to trigger coverage. (*Id.*)

[3] The Plan Document defines "Emergency" as "[a] condition or symptom (including severe pain) that a prudent layperson, who possesses an average knowledge of health and medicine, would believe requires immediate treatment to: (1) Preserve your life; or (2) Prevent serious impairment to your bodily functions, organs, or parts; or (3) Prevent placing your physical or mental health . . . in serious jeopardy." (*Id.* at MEDICA000250; Am. Compl. ¶ 16.)

[4] The Plan defines "network" as "[a] provider . . . that has entered into a written agreement to provide benefits to you . . . ." (Plan Document at MEDICA0000252.) A "non-network" provider is not under contract as a network provider. (*Id.*)

at MEDICA0000243.) The written notification includes the reason for the denial, references to the provision(s) of the plan on which the denial is based, a description of any additional information necessary to complete the claim, and an explanation of the Plan's claim review process. (*Id.*) A dissatisfied claimant has 180 days from the date the claim was denied to submit a written request for appeal to Medica. (*Id.*) Medica then reviews the denied claim and issues a written decision within 30 calendar days after receiving the request. (*Id.*) If a claimant is dissatisfied with Medica's appeal decision, the claimant may request an independent external review. (*Id.*) A claimant who is ultimately unhappy with Medica's appeal decision may file a civil action suit under § 502 of ERISA so long as it is filed within two years after the claim was submitted. (Edwards Aff. ¶ 9, Plan Document at MEDICA0000244.)

On December 8, 2016, CustomAir sent Medica a letter written by Darlene in support of CustomAir's claim for Plan coverage. (Edwards Aff. ¶ 16, Ex. 6 ("Dec. 8, 2016 Appeal").) The letter was written on December 2, 2016, and included the heading, "APPEAL." (*Id.*) Medica deemed Darlene's letter to constitute an appeal of its Dec. 2, 2016 denial. (*Id.*) In her appeal, Darlene specifically asked Medica to reconsider its position that Laura's air ambulance services were not "medically necessary." (*See* Dec. 8, 2016 Appeal.)

On December 14, 2016, Medica upheld its initial denial on the grounds that the transport was not "medically necessary," and therefore excluded from coverage under the Plan. (Edwards Aff. ¶ 17, Ex. 7.) In its appeal decision, Medica informed CustomAir that it was entitled to obtain an external review with an independent review organization

and further advised that CustomAir had the right to bring a civil suit under § 502(a) of ERISA after it had completed the required administrative process. (*Id.*)

On January 11, 2017, CustomAir, through its counsel, sent Medica a letter entitled, "REQUEST FOR RECONSIDERATION OF APPEAL AND EXTERNAL REVIEW" asserting that Medica erred by determining on appeal that the air ambulance transport was not "medically necessary." (Edwards Aff. ¶ 18, Ex. 9 at 5, 6-8.) The letter asked that Medica "reconsider the denial of the appeals by Dr. Devalapalli and Darlene, reverse the denial and pay [CustomAir's] bill for transporting Laura." (*Id.* at 8.) In the alternative, CustomAir requested an external review. (*Id.*)

Medica agreed to reconsider its appeal decision. (Edwards Aff. ¶ 19.) On March 14, 2017, Medica notified CustomAir that it had overturned its prior decisions and determined that the air ambulance services provided to Laura were "medically necessary." (Edwards Aff. ¶ 19, Ex. 10 ("March 14, 2017 Decision") at 1.) Nonetheless, Medica determined that the air ambulance services were not an "emergency," and that the appropriate reimbursement to CustomAir as a "Non-network" provider was $165,091. (*Id.* at 1-5.) Medica denied the remainder of CustomAir's claim in the amount of $234,373. (*Id.* at 1.) Because the determination included a partial denial of CustomAir's claim, Medica included in its March 14, 2017 Decision that CustomAir had a right to appeal by submitting a first level of review within 180 days. (*See* Edwards Aff. ¶ 19, March 14, 2017 Decision at 5-8.) The March 14, 2017 Decision stated:

> As noted above, because our determination resulted in a partial denial of
> your claim on the amount of reimbursement, you have the right to submit a

> first level of review to Medica . . . . You must request an appeal within 180 days from the date of the claim denial. The appeal request should state the reasons you believe the claim denial was improper and should be accompanied by any additional information, material or comments you consider appropriate.

(*Id.* at 5).

CustomAir did not appeal the March 14, 2017 Decision.[5] (Edwards Aff. ¶ 22.) On June 9, 2017, CustomAir's counsel sent a letter to Medica entitled, "DEMAND FOR DOCUMENTS AND REQUEST FOR EXTENSION OF TIME TO SUBMIT APPEAL. THIS IS NOT AN APPEAL." (Edwards Aff. ¶ 21, Ex. 11 at 1.) The letter stated in part, "Please promptly confirm in writing that we may have the requested time to submit our appeal." (Edwards Aff. ¶ 20, Ex. 11 at 3.) CustomAir's counsel subsequently referred to an appeal of the March 14, 2017 Decision in multiple requests to extend its filing deadline. (Hittler Aff. ¶ 1, Exs. J, L-M, O-P.) On August 16, 2017, CustomAir's counsel corresponded with Medica regarding its perceived problems with the March 14, 2017 Decision. (Hittler Aff. ¶ 1, Ex. T at 1, 4; *see also* Am. Compl. ¶ 41.) On November 2, 2017, CustomAir's Counsel suggested to Medica that it may consider the August 16, 2017 correspondence an appeal of the March 14, 2017 Decision. (Hittler Aff. ¶ 1, Ex. T

---

[5] CustomAir asserts that it filed multiple appeals including the medical records sent by Dr. Devalapalli on November 18, 2016 (Am. Comp. ¶ 26), the letter written by Darlene in support of CustomAir's claim (Am. Comp. ¶ 27; Edwards Aff. ¶ 16, Dec. 8, 2016 Appeal), its request for reconsideration of its initial appeal (Am. Comp. ¶ 28; Edwards Aff. ¶ 21, Ex. 11), and written communication on August 16, 2017 (Am. Comp. ¶ 41; (Hitler Aff. ¶ 1, Ex. T at 4). The record does not convey that CustomAir initiated a first level review of the March 14, 2017 Decision.

at 1.) Medica did not consider the August 16, 2017 correspondence to be an appropriate appeal. (Doc. No. 24.)

On October 26, 2017, CustomAir's counsel informed Medica's counsel that it believed CustomAir had exhausted the administrative appeals process. (Hittler Aff. ¶ 1, Ex. S at 1.) On November 21, 2017, CustomAir filed this lawsuit. (Doc. No. 1.) CustomAir filed an Amended Complaint on January 18, 2018. (Am. Compl.) Medica now moves to dismiss CustomAir's Amended Complaint for failure to exhaust administrative remedies. (Doc. No. 21.) Lund Foods Holding, Inc. joins Medica's motion. (Doc. Nos. 28, 30.)

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). In ERISA

7

cases, this includes ERISA Plan documents. *See Stahl v. U. S. Dep't of Agric.*, 32 F.3d 697, 700 (8th Cir. 2003).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. Exhaustion of Administrative Remedies

ERISA does not explicitly require exhaustion of administrative or plan remedies. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. Exhaustion is required, however, if a plan requires exhaustion or administrative remedies. *Conley v. Pitney Bowes*, 34 F.3d 714, 716-17 (8th Cir. 1994); *UnitedHealth Group PBM Litig.*, 2017 WL 512222, at *5 (D. Minn. Dec. 19, 2017). "Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred." *Chorosevic v. MetLife Choices*, 600 F.3d 934, 941 (8th Cir. 2010) (citing *Layes v. Mead Corp.*, 132 F.3d 1246, 152 (8th Cir. 1998)).

8

The contractually created remedy to exhaust administrative remedies "serves many important purposes, including giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, decreasing the cost and time of claims resolution, assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits." *Angevine v. Anheuser-Busch Cos. Pension Plan*, 646 F.3d 1034, 1037 (8th Cir. 2011) (internal quotation marks and citation omitted).

Exhaustion is not required, however, if: (1) pursuing an administrative remedy would be futile, or (2) there is no available administrative remedy. *Id.* To show futility, a plan participant must show it is certain the claim will be denied on appeal. *Brown v. J.B. Hung Transp. Servs., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009).

Here, the Plan clearly required exhaustion of administrative remedies prior to filing a lawsuit. (Plan Document at MEDICA0000243-244.) The Plan also defined the claim denial appeal process: (1) First Level of Review; (2) Optional External Review; (3) Right to take Legal Action. (*See* Plan Document at MEDICA000219-220; MEDICA0000243-244.) Further, in light of the fact that Medica overturned its initial decision regarding the medical necessity of Laura's transport, the Court finds that the appeal process is not futile. (*See* Edwards Aff. ¶ 19, March 14, 2017 Decision at 1.)

The parties dispute whether CustomAir has exhausted its administrative remedies. Specifically, the parties dispute whether CustomAir was required to appeal Medica's March 14, 2017 Decision as part of the administrative remedies process. CustomAir argues that exhaustion of the Plan's administrative remedies requires a single appeal,

9

which it fulfilled by appealing the Dec. 2, 2016 Decision. It maintains that reconsideration of an initial denial does not trigger a separate first level review, even when the reconsideration results in a partial denial based on new reasons. To this end, CustomAir contends that it filed not one, but four separate appeals and has exhausted its administrative remedies under the Plan. (Am. Compl. ¶ ¶ 6, 41.)

Medica insists, however, that each of CustomAir's alleged appeals dealt exclusively with its initial denial of CustomAir's claim. This denial was based on Medica's determination that Laura's air ambulance services were not "medically necessary." (Edwards Aff., ¶ 16, Dec. 2, 2016 Denial). Medica argues that upon reconsideration of its initial denial, its subsequent decision required a separate first level review because its second, partial denial was based on different reasons than its initial denial. Specifically, the second decision overturned its finding that Laura's air ambulance services were not medically necessary, but determined that the transport was not an emergency and calculated the reimbursement under the Plan's provision for a non-network provider. Medica argues that because CustomAir did not request a first level review of its decision regarding whether the transport was an emergency and the amount of reimbursement, CustomAir has not exhausted its administrative remedies.

The Court finds that CustomAir has failed to exhaust its administrative remedies. Medica's March 14, 2017 Decision addressed two issues not applicable to Medica's initial decision: (1) Medica classified the air emergency services as "non-emergency," and (2) Medica calculated the reimbursement amount under the Plan's "non-network provider" provision. CustomAir's appeal of Medica's initial denial on Dec. 2, 2016 was

10

successful. CustomAir prevailed in arguing that Laura's air ambulance services were medically necessary. Nonetheless, the administrative record is incomplete because CustomAir has not specifically appealed Medica's partial denial based on its classifications of the transport as "non-emergency," and "non-network."

After rendering a decision adverse to CustomAir, Medica was required under ERISA and the Plan to notify CustomAir of its right to appeal. *See Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 236 (4th Cir. 2008). Medica satisfied this requirement in its March 14, 2017 Decision by clearly indicating on page 5 of the decision that CustomAir had a right to request a first level review of the partial denial. (March 14, 2017 Decision at 5.) The requirement to appeal this second decision is consistent with several of the underlying purposes of the requirement to exhaust administrative remedies: to provide a non-adversarial dispute resolution process, to assemble a fact record that will assist the court if judicial review is necessary, and to decrease the cost and time of claims resolution. *See Angevine*, 646 F.3d at 1037.

While the Court notes CustomAir's frustration and belief that it filed multiple appeals not required by the Plan, the Court also observes that CustomAir made several references to appealing the March 14, 2017 Decision, but never actually requested a first level review of the new issues. Because the administrative record is incomplete, this case is not yet ripe for the Court to review.

## CONCLUSION

The time has long since passed for the parties to resolve this issue among themselves. While the Court is obligated to rule on the issue currently before it, it is

difficult for the Court to understand how continued litigation will serve to promote a fair resolution. The interests of all concerned are best served through settlement.

Nonetheless, based on the foregoing, the Court concludes that CustomAir failed to exhaust its administrative remedies by not appealing the March 14, 2017 partial denial of its claim. The Court therefore dismisses CustomAir's Amended Complaint.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. Nos. [21], [ 28]) is **GRANTED**.

2. Plaintiff's Amended Complaint (Doc. No. [5]) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 14, 2018          s/Donovan W. Frank
                                                   DONOVAN W. FRANK
                                                   United States District Judge